## How vs. Codman.

The proper remedy against the indorser of a writ is by *scire facias*.

The "*prison charges*" mentioned in *Stat.* 1821, *ch.* 59, *sec.* 8, do not include the sheriff's fees on execution.

In *scire facias* against the indorser of a writ, no interest is allowed on the judgment recovered in the original suit.

The common law that an agent, acting in the name of his principal, does not bind himself, is altered by *Stat.* 1821, *ch.* 59, *sec.* 8, so far as it regards indorsers of writs.

THIS was a *scire facias* against the defendant as indorser of an original writ in favor of one *Cram* against *How*, in a suit wherein *How* prevailed, and had execution for his costs. *Cram*, having been committed to prison on the execution, had been discharged by taking the poor debtor's oath.

The plaintiff now claimed the amount of his judgment for costs, together with the price of the writ of execution, and the sheriff's fees, paid for committing *Cram* to prison; with interest.

The defendant offered to prove that when he indorsed the writ, which was done thus—" *Green Cram*, by his attorney *R. A. L. Codman*," the plaintiff *Cram* was present, and authorized him so to indorse it. This evidence was excluded by the Chief Justice, before whom the cause was tried, he deeming it immaterial; and a verdict was returned by his direction for the plaintiff, for the amount of all his demand, except the interest; there being no proof that *Cram* had sufficient property to satisfy the execution.

The verdict was taken subject to the opinion of the court on the following questions:

1. Whether the writ of *scire facias* was the proper remedy.

2. Whether the evidence offered by the defendant was properly rejected.

3. Whether the defendant was answerable for the costs of commitment.

4. Whether the plaintiff was entitled to interest on the judgment.

And the verdict was to be amended or set aside accordingly.

*Longfellow,* for the defendant, observed that different forms of action had been resorted to in cases like the present, but no express decision having been had upon the propriety of any of them, the question still remained open. And he contended that *scire facias* was not the proper remedy. There is nothing by which the court can make up the judgment, the cause of action being partly matter of record, and partly matter *en pais.* The amount, so far as the expenses of commitment are concerned, can only be ascertained by parol testimony, and the intervention of a jury.

This mode of remedy could not be resorted to against bail, till the statute gave it ; because their liability here is not of record, as in England ; but it is by bond to the sheriff. And the reason for denying it against the indorser of a writ is the same.

He was proceeding, under the second question, to argue that by the form of the indorsement the defendant bound his principal, and not himself ;—but was stopped by the Chief Justice, who observed that the same question having been recently settled in the case of *Davis v. M'Arthur 3 Greenl.* 27, there was no propriety in again permitting it to be discussed.

Upon the third question he said that the costs of commitment in execution, were not the " prison charges" mentioned in the statute. If the plaintiff commits the defendant on *mesne* process, and fails to support his action, then the indorser is liable for his expenses in prison ;—but it is not so where the defendant prevails in the suit, and commits the original plaintiff to prison under the execution.

*Adams,* for the plaintiff, contended that the proper remedy was by *scire facias,* because the object of the suit was simply to obtain execution of a judgment. 2 *Salk.* 598. 14 *Mass.* 386. 6 *Mass.* 494. 10 *Mass.* 359. 11 *Mass.* 411. 8 *Mass.* 266. *Reid v. Blaney* 2 *Greenl.* 128.

The evidence of *Cram* was properly rejected.—When a writ is indorsed, a contract is expressly made, in the language of the statute, between the indorser and the defendant, to secure the latter his costs. The terms of this contract being plain and unambiguous, they cannot be altered, explained or impugned by

parol testimony. If the evidence of *Cram* was offered for this purpose, it was inadmissible. If not, it was irrelevant and useless. 5 *Mass.* 97. 13 *Mass.* 422. 7 *Mass.* 25. *Stackpole v. Arnold* 11 *Mass.* 27.

As to the third question, he argued that the term "prison charges" in the statute included not only the expenses of supporting the original defendant in prison when committed on *mesne process,* but also all monies necessarily expended in placing the plaintiff there, on the execution recovered against him. The intent of the law was to give the original defendant a complete indemnity, against the indorser of the writ ; which, upon any other construction, cannot be had.

And upon the same principle he is liable for interest; because his liability is intended to be commensurate with that of his principal; against whom, in debt on the judgment, interest would of course be allowed. *Weeks v. Hasty* 13 *Mass.* 218.

The opinion of the court was delivered by

MELLEN C. J. As to the first question reserved, we are of the opinion that *scire facias* is proper process in the present case. It has always been used in Massachusetts ; and its correctness seems never to have been even questioned in a single instance ; though several cases of the kind are reported which were sharply contested on various grounds. In *Reid v. Blaney* 2 *Greenl.* 128, we at least indirectly intimated the same opinion which we now expressly give. We do not say that an action on the case would not be as convenient and correct as the remedy by writ of *scire facias* ; but there can be no advantage in changing a long established course of proceeding, which relates merely to a remedy, and has no connection with a right. We therefore cannot sustain the objection, which has been urged against this process.

The second question has become unimportant, in consequence of our decision in the case of *Davis v. McArthur* 3 *Greenl.* 27.

The third depends on the meaning of a very loose expression made use of in the statute of 1821, *ch.* 59, *sec.* 8. The sentence is this: "And the plaintiff's agent or attorney who shall so indorse

" his name on the original writ, shall be liable, in case of the
" avoidance or inability of the plaintiff, to pay the defendant all
" such costs as he shall recover ; and to pay all prison charges that
" may happen where the plaintiff shall not support his action."
What are prison charges ?  If the plaintiff does not support his
action, the defendant can never suffer any imprisonment on exe-
cution ; if he suffers any, it must be on *mesne process.*   He may
be compelled to suffer this, being unable to procure bail ; and in
his imprisonment, he must necessarily incur expense ; and we do
not perceive any expense or charges more properly termed pris-
on charges than these.    There certainly seems to be justice in
subjecting the indorser to the payment of these, where the suit
proves to be groundless.   We say, this seems to be the most
correct construction to be given to the foregoing expressions ; but
without deciding this point definitively, we are all clear in the
opinion that the charges of committing the original plaintiff to
prison on the original defendant's execution, cannot in any legal
or proper sense be denominated prison charges within the mean-
ing of the above provision.   Such an expense is not incurred in
prison ; and what connection have an officer's fees for travel, or
for what is called dollarage, on an execution for a bill of cost of
hundreds of dollars, with a prison, or how can they be deemed
prison charges ?   We are well satisfied, that an officer's fees on
execution, were never intended to be embraced in the above
terms ; and accordingly the amount of those fees, now included
in the verdict, must be deducted ; and it is then to stand, so
amended, for the balance and no more; as we cannot, on this *scire
facias,* allow any interest.

Let the verdict be amended accordingly and judgment be en-
tered for that amount.

NOTE.—After the foregoing opinion was delivered, the Chief Justice observed
that as the court had been pressed to revise their decision in the case of *Davis v.
McArthur,* which they had not thought it expedient to do, being satisfied with
the principles on which it rested, he would, for the satisfaction of counsel, state
these principles more at large.   This he did to the following effect.

By the principles of the common law, an attorney or agent who, being duly au-
thorized, makes a contract in the name of his principal, as he ought to do, thereby

How *v.* Codman.

binds his principal, and not himself.  In the case at bar the defendant, as attorney, indorsed the writ in question in the name of the plaintiff suing in that writ ; and *if* duly authorized so to indorse it, at *common law,* this would have bound the principal, and not the attorney.  The question then is whether the *Stat.* 1821, *ch.* 59, which so far as it respects original writs issuing from the court of Common Pleas and from this court, is an exact copy of the law now in force in *Massachusetts* which was passed in 1784, has altered the common law in relation to that particular contract which is created by the indorsement of a writ.  The section contains four provisions.  1.  If the plaintiff lives in this State, his writ must be indorsed by himself, or his agent or attorney living within the State.  2.  If the plaintiff lives out of the State, his writ must be indorsed by some responsible person who is an inhabitant of the State.  3.  If the person, agent, or attorney, who indorsed the writ is not of sufficient ability, the court may order the procurement of a new indorser, who is to be holden in the same manner as the original indorser. 4.  The plaintiff's agent or attorney who so indorses a writ shall be holden to pay the defendant all such costs as he shall recover in case of the plaintiff's avoidance or inability.

It is admitted that where an attorney or agent indorses a writ thus—"*A. B. attorney to C. D.*" the attorney is liable  But where he indorses the writ thus—"*C. D. by his attorney A. B.*", it is contended that the attorney is not liable.  It is true that, at common law, according to decided cases, such a distinction exists.  But the statute has abolished this distinction in cases of indorsements of writs; and has made the attorney liable, though professing to act in that capacity and in no other.  It binds him who actually indorses the writ.  If the plaintiff indorses it himself, then he is bound ;—and so in truth he is, without his indorsement.  If the plaintiff's agent or attorney indorses it then he is liable, though acting in that capacity. The statute makes it his own contract.  This construction is supported by the provision for the procurement of a new indorser in certain cases ; and for the indorsement of the writ by some responsible agent or attorney, where the plaintiff is an inhabitant of another State.  For, upon the defendant's construction of the statute, of what use is either of these provisions, or why were they enacted ? It is of no importance whether the indorser be a responsible person or not, if he is not bound by the indorsement ; and a new indorser is no better than the original one, unless liable personally.  If the mode of indorsing which the defendant has adopted will protect him from liability, every other attorney may adopt the same mode ; and the provision which was intended to give rights and furnish an additional security to the defendant will be rendered wholly nugatory.  Such a construction must not be admitted as would completely destroy the effect of a law, and amount to an evasion of it.  In a word, whether a writ is indorsed "*A. B.* attorney to *C. D.*" or, "*C D.* by his attorney *A B.*", is immaterial.  In both cases A. B. professes to act and does act as attorney, and in no other capacity ; and yet the statute expressly renders the agent or attorney liable.  It has in this instance changed the common law.  But we are not without authority on this subject.  The case of the *Middlesex Turnpike Corporation v. Tufts* 8 *Mass.* 266, seems directly in point.  The writ was indorsed thus ; "*The Middlesex*

*Turnpike Corporation, by Royal Makepeace.*" It was admitted that *Make-peace* was the agent of the Corporation ; but it was contended that by this indorsement he had not made himself personally liable to the defendant But the court said that the addition was nothing more than the law would imply: viz. that *Makepeace* was the agent for the Corporation ; and that the defendant would be entitled to the same remedy against him as if he had written his name only. Here the indorsement was in the same form as in the case at bar, except that he did not describe himself as agent or attorney. The argument of the defendant proceeded on the admission that he would have been bound, had he so described himself ; and yet in the case before us, this very circumstance is urged as a reason why the defendant should not be held liable. The court there said, the law implied the agency; here it is expressed.

Some have said that as the statute requires the plaintiff's writ to be indorsed by his, or his attorney's " christian and surname," it cannot be applicable to corporations aggregate, because they have no such name. This is too refined. A plaintiff's christian and surname constitute his name; and the corporate name of a corporation is its only name—the statute requires in both cases the plaintiff's whole name. This nice distinction did not present itself to the mind of Chief Justice *Parsons* in the case before cited ; because he said expressly that the indorsement in that case was binding on *Makepeace* ; but if such a case or such a plaintiff was not within the meaning of the statute, his indorsement would have had no operation whatever; nor have bound him any more than if he had written his name on any loose piece of paper.